# In the United States Court of Federal Claims

PETRINA SMITH,

              Plaintiff,

      v.

THE UNITED STATES,

              Defendant.

No. 19-cv-1348

Filed: October 15, 2021

*Lisa Brevard*, The Markham Law Firm, San Diego California.  With her on the briefs are *David R. Markham* and *Maggie Realin*, The Markham Law Firm, San Diego California; *Walt Pennington*, Pennington Law Firm, San Diego, California; *Stephen B. Morris*, The Law Offices of Stephen B. Morris, San Diego, California.

*Rafique O. Anderson*, United States Department of Justice, Civil Division, Washington, D.C. for Defendant.  With him on the briefs are *Brian M. Boynton*, Acting Assistant Attorney General, Civil Division; *Martin A. Hockey, Jr.*, Acting Director, Commercial Litigation; *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation, Washington, D.C.

## MEMORANDUM AND ORDER

Plaintiff Petrina Smith worked as an Assistant Canteen Chief at the Department of Veterans Affairs (VA) Veterans Canteen Services (VCS) in its Palo Alto and Menlo Park, California canteens.  *See* Complaint (ECF No. 1) (Compl.) ¶ 2.  She alleges that Defendant United States improperly classified her as "exempt" under the Fair Labor Standards Act (FLSA), preventing her from receiving overtime pay for hours worked beyond the 40-hour work week.  *Id.* ¶¶ 2, 4-5.  Plaintiff brings this suit on behalf of herself and other similarly situated current and former VCS employees.  *Id.* ¶ 6.  She seeks a declaratory judgment that recognizes the violation of her rights, and the rights of those similarly situated, an award of unpaid overtime compensation, liquidated damages, attorneys' fees and costs, and other available relief.  *Id.*

Plaintiff filed a motion for conditional certification under the FLSA, proposing a nationwide collective of exempt-classified Assistant Canteen Chiefs and/or Assistant Store Managers (Assistant Manager(s), Assistant Chief(s), or ACC(s)) employed at any time within the three years preceding the date when Plaintiff filed her complaint and consent to sue form. *See* Plaintiff's Motion for Conditional Certification and Notice (ECF No. 25) (Pl. Mot.) at 5.

As part of her motion, Plaintiff requests that Defendant provide, "in electronic format, the names, last known addresses, telephone numbers, job titles, and last known email addresses of all potential opt-in plaintiffs . . . ." *Id.* at 32. She also requests equitable tolling of the statute of limitations from April 13, 2020 (i.e., 30 days after Plaintiff initially requested contact information for prospective collective action members) until the deadline for collective action members to opt-in. *Id.* at 34-35.

While Defendant opposes a nationwide collective action, it does not oppose conditional certification of a collective action covering ACCs who worked at the Palo Alto and Menlo Park, California canteens. *See* Defendant's Response in Opposition to Plaintiff's Motion for Conditional Certification and Notice (ECF No. 26) (Def. Resp.) at 1-2, 39-41, 44. Defendant opposes Plaintiff's proposed notice and consent forms, proposed means of notice, and requested tolling of the statute of limitations. Def. Resp. at 41-44.

As stated in this Court's September 28, 2021 Order, more fully explained below, Plaintiff's Motion for Conditional Certification (ECF No. 25) is **GRANTED in part** and **DENIED in part**. Plaintiff's request for nationwide conditional certification is **DENIED without prejudice**. Plaintiff's alternative request for conditional certification of a collective action of all individuals employed by the VCS as ACCs in the Palo Alto and Menlo Park, California canteens during the

last three years is **GRANTED**.  Notice to potential collective members shall be limited to delivery by mail.[1]  Finally, Plaintiff's request for equitable tolling is **DENIED**.

I.  Factual Background[2]

Veterans Canteen Services is an organization within the Department of Veterans Affairs that provides food and retail services to veterans and their families.  *See* Def. Resp. Ex. 1, Declaration of James G. Leahy (Leahy Decl.) (ECF No. 26-1) ¶ 5.  The VA operates 211 canteens across all 50 states and Puerto Rico.  *Id.*  Canteens are ranked according to the variety of operations present at the location (retail, café, coffee, etc.) and are divided into 14 regions.  *Id.* ¶¶ 7, 9.  Each region contains between 10 and 20 canteens.  *Id.* ¶¶ 8-9.  Each canteen is managed by a Canteen Chief (CC), who reports to the regional manager.  *Id.*  Canteens may also employ a small number of ACCs depending on the size of the canteen.  *Id.*

ACCs report directly to the CC and are assigned to manage either a department or a specific function within the canteen.  *Id.* ¶ 9.  All ACCs fall under a generalized job description.  Pl. Mot. Ex. 8, Assistant Chief VCS Job Description (ECF No. 25-1) at 98-103.  However, their precise duties may vary based upon which department they oversee, the size and location of their canteens,

---

[1] Pursuant to this Court's September 28, 2021 Order, the parties are scheduled to file a proposed notice limited to the Palo Alto and Menlo Park canteen locations by October 15, 2021.  *See* September 28, 2021 Order (ECF No. 29).

[2] The Court references Defendant's declaration and Plaintiff's complaint in this section merely to provide appropriate background on VA operations.  Such references are appropriate here as the operational descriptions are not in dispute.  Such references should not be construed as an endorsement of any party's evidence.  *See Gayle v. United States*, 85 Fed. Cl. 72, 77 (2008) ("In deciding whether to conditionally certify a collective action, 'the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007))).

and the leadership style of their CCs.  Leahy Decl. ¶¶ 7-11.  All ACCs are classified as exempt from the overtime provisions of the FLSA.  Compl. ¶ 19.

Plaintiff was employed as an ACC at Canteen locations in Palo Alto and Menlo Park, California from September 2012 until February 2019.  Compl. ¶ 2.  Plaintiff alleges that she and other similarly situated ACCs were improperly classified as exempt from the FLSA overtime provisions because most of their work involved non-exempt manual, rather than managerial, tasks. *Id.* ¶¶ 21-22.  Specifically, Plaintiff alleges that she spent 90 percent of her time conducting manual tasks in the food service, retail store, and coffee products and services components of the store. *Id.* ¶¶ 22-23.  She alleges that this labor extended well beyond the normal 40-hour work week without the added benefit of any overtime pay.  *Id.* ¶¶ 26-28.  In addition to often working 14 to 16 hour days, she alleges that she would often be called into work on her off days.  *Id.*  Plaintiff complained about these practices to her Regional Manager, Human Resources, and her CCs, but she says she was told that "she was salaried and that she had to stay until her work was complete." *Id.* ¶ 29.

In support of her motion, Plaintiff submitted 24 exhibits and her own declaration.  *See generally* Pl. Mot., Appendix of Exhibits, Part 1 (ECF No. 25-1); Pl. Mot., Appendix of Exhibits, Part 2 (ECF No. 25-2); Declaration of Plaintiff Petrina Smith in Support of Plaintiff's Motion for Conditional Certification (ECF No. 25-3) (Pl. Decl.); Pl. Reply, Plaintiff's Supplemental Appendix of Exhibits (ECF No. 28-2).  In addition to her declaration, Plaintiff's exhibits include, *inter alia*, depositions from Defendant's 30(b)(6) witness (Ex. 2) and Defendant's percipient witness (Ex. 3), VCS policies (Exs. 1, 4-5, 9, 13-14, 17), ACC job descriptions and postings (Exs. 6-8, 10-12), and Plaintiff's own employee information (Exs. 15, 18).

II.   <u>Procedural History</u>

On September 4, 2019, Plaintiff filed her complaint and consent to sue form.  Compl. ¶¶ 51-58; Compl. Exhibit 1 (ECF No. 1-1).  Following the pleading stage, the parties submitted their joint preliminary status report proposing limited discovery on whether ACCs are similarly situated such that conditional certification would be proper.  *See* Joint Preliminary Status Report (ECF No. 10) at 5-6.

Plaintiff served a set of interrogatories and requests for production of documents on Defendant.  *See* Pl. Mot. at 8.  After multiple continuances due to delays caused by the COVID-19 pandemic and Defendant's counsel's difficulties in obtaining the requested discovery information from the VA,[3] Defendant produced over 4,600 documents including all VCS operational policies, daily and hourly time and attendance documents for 71 ACCs for a three-year period, and employee personnel documents.  *Id.* at 8; *see also* Def. Resp. at 16-17.  Plaintiff subsequently deposed Abner Martinez, a VA Human Resources Manager and Defendant's percipient witness, and Joseph R. Tober, Defendant's 30(b)(6) witness, regarding the topics of employee classification, job descriptions, and canteen operational policies and procedures.  *See* Pl. Mot. at 8; *see also* Def. Resp. at 8.

Following discovery on the issue of whether all ACCs are similarly situated, Plaintiff moved for conditional certification on June 4, 2021.  *See* Pl. Mot.  Defendant filed its response on July 2, 2021, and Plaintiff filed her reply on July 16, 2021.  *See* Def. Resp.; Pl. Reply.

---

[3] The schedule for pre-conditional discovery was amended three times before Defendant produced responsive documents on January 25, 2021.  *See* Pl. Mot. at 8; ECF No. 17 (first amended scheduling order, issued on June 29, 2020); ECF No. 19 (second amended scheduling order, issued on September 1, 2020); ECF No. 21 (third amended scheduling order, issued November 20, 2020).

On September 28, 2021, the Court conducted oral argument on Plaintiff's motion.  As the parties indicated that they would prefer to receive a ruling on the record, the Court provided the parties an explanation of its ruling during oral argument and issued an Order reflecting the essential terms of its ruling, noting that it would more fully explain its reasoning in a forthcoming opinion. *See* September 28, 2021 Order; September 28, 2021 Oral Argument Transcript (ECF No. 31) (Tr.) at 46:3-48:20.

DISCUSSION

Consistent with this Court's September 28, 2021 Order, this Memorandum and Order provides more detailed explanations for the Court's decision to grant in part and dismiss in part Plaintiff's Motion for Conditional Certification.  The Court declines to conditionally certify a nationwide collective of ACCs because Plaintiff has not shown that ACCs across the country are similarly situated to herself.  However, Plaintiff has established, and Defendant concedes, that it is appropriate to authorize a more limited collective action comprising ACCs employed in the Palo Alto and Menlo Park, California canteens.  Second, as explained further below, Plaintiff did not establish a need for authorizing the more expansive means of notification that it requested. Accordingly, the notice—once this Court approves its form and contents—will be sent to potential members of the collective via mail.  Finally, this Court applies equitable tolling sparingly.  Plaintiff has not shown that a defective pleading was filed during the statutory period, that Defendant tricked Plaintiff into allowing a deadline to pass, or that Plaintiff's injury was inherently

unknowable.  Accordingly, the claims of the conditionally approved collective action are subject to the three year limitation period under the FLSA.

I.    Conditional Certification of a Nationwide Collective Action

The FLSA allows employees to sue employers collectively.  Section 216(b) of the FLSA provides:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Employees alleging violations of their rights under the FLSA may bring a claim seeking relief for themselves and all "other employees similarly situated."  29 U.S.C. § 216(b).

The FLSA, however, does not specify a procedure for joinder of "similarly situated" plaintiffs.  *See Gayle v. United States*, 85 Fed. Cl. 72, 77 (2008).  Rather, courts have wide discretion to manage joinder in FLSA collective actions.  *See Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 169-71 (1989) (explaining that trial courts have "discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs").  Courts have developed four procedural approaches for joinder of additional parties in FLSA actions: (1) "a two-step ad hoc approach," comprising a conditional certification stage and a more rigorous decertification stage; (2) an approach that mirrors the requirements for certifying a class under Federal Rule of Civil Procedure (Fed. R. Civ. P.) 23; (3) an approach that follows the "spurious class action" that prevailed in the pre-1966 version of Fed. R. Civ. P. 23; and (4) an approach endorsed by the U.S. Court of Appeals for the Fifth Circuit (Fifth Circuit) that analyzes whether to issue court-approved notice to absent individuals rather than focus on "certification."  *Gayle*, 85

Fed. Cl. at 77 (identifying the first three approaches); *Valte v. United States*, No. 16-1485C, 2021 WL 3821886, at *4 (Fed. Cl. Aug. 26, 2021) (identifying the fourth approach as a more recent development (citing *Swales v. KLLM Transport Servs., L.L.C.*, 985 F.3d 430, 439 (5th Cir. 2021))). The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has not endorsed a particular approach for certifying a collective action under 29 U.S.C. § 216(b). *Valte*, 2021 WL 3821886, at *4 ("The most relevant Federal Circuit decision—which applied the then-applicable Second Circuit precedent—authorized discovery to potential collective action members but did not endorse any procedure or standard for proceeding as a collective action.").

Both parties suggest applying the two-step approach, and they argue exclusively within that framework. While not required to do so by Federal Circuit precedent, this Court routinely applies the two-step approach. *See, e.g.*, *Crawley v. United States*, 145 Fed. Cl. 446, 449 (2019); *Boggs v. United States*, 139 Fed. Cl. 375, 378 (2018); *Dominick v. United States*, 135 Fed. Cl. 714, 716 (2017); *Barry v. United States*, 117 Fed. Cl. 518, 520-21 (2014); *Whalen v. United States*, 85 Fed. Cl. 380, 383 (2009); *Gayle*, 85 Fed. Cl. at 77-78; *Briggs v. United States*, 54 Fed. Cl. 205, 206 (2002).[4] Accordingly, while this Court finds the Fifth Circuit's approach sensible, in light of the parties' agreement on application of the two-step framework and wide acceptance of that standard in this Circuit, this Court analyzes Plaintiff's motion under the two-step framework for certifying an FLSA collective action.

---

[4] This two-step approach also enjoys support in other circuits. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (adopting the two-step approach for certifying collective actions under the FLSA); *Halle v. West Penn Allegheny Health Sys. Inc.*, 842 F.3d. 215, 224 (3d Cir. 2016) (same); *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (same); *Hollins v. Regency Corp.*, 867 F.3d 830, 833 (7th Cir. 2017) (same); *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018) (same); *Mickles on behalf of herself v. Country Club Inc.*, 887 F.3d 1270, 1276 (11th Cir. 2018) (same).

A court may conditionally certify a collective action if the plaintiff makes a preliminary showing that potential collective members are similarly situated. *Gayle*, 85 Fed. Cl. at 77 (citations omitted). "'[C]onditional certification' does not produce a class with an independent legal status, or join additional parties to the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).[5]   Rather, conditional certification allows the court to determine whether to send court-approved notice to absent individuals who appear to be similarly situated to the plaintiffs. *Id.* (citing *Hoffmann-La Roche*, 493 U.S. at 171-72). This "provide[s] potentially affected employees the opportunity to make informed decisions about whether to participate, which benefits the judicial system by promoting efficient resolution of common issues of law and fact arising from the same alleged discriminatory activity." *Crawley v. United States*, 145 Fed. Cl. 446, 450 (2019) (internal quotations and citations omitted). If a potential member of a collective action chooses not to opt-in to the suit, he is not barred from pursuing his own claim and may still separately sue based on his own facts and circumstances. *See Valte*, 2021 WL 3821886, at *4 ("A collective action does not bind absent individuals or enable named plaintiffs to control the litigation in the manner of class-action representatives." (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018); *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008))).

Under the second step, if the opt-in plaintiffs are in fact not similarly situated, the court can subsequently decertify the action. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). "If

---

[5] Many decisions regarding FLSA collective actions refer to groups of plaintiffs as a "class" rather than a "collective." However, the two concepts are distinct. Members of a Rule 23 class action are bound by the judgment or settlement unless they opt out; in contrast, FLSA plaintiffs must opt into the collective action. *See Swales v. KLLM Transport Servs., L.L.C.*, 985 F.3d 430, 435 (5th Cir. 2021) (explaining how the FLSA's opt-in requirement was a response to excessive litigation produced by plaintiffs without a personal interest in the case's outcome). Cited decisions discussing a "class" in the FLSA context should be understood to refer instead to a collective action consistent with this Memorandum and Order's use of that term.

final certification is not granted, the court decertifies the class, dismisses the opt-in plaintiffs without prejudice, and permits any remaining individuals to proceed to trial.  However, if final certification is granted, the action proceeds to trial on a representative basis."  § 1807 Collective Actions Under the Fair Labor Standards Act, 7B Fed. Prac. & Proc. Civ. § 1807 (3d ed. 2021).

While the parties agree on the use of the two-step process, they disagree on the evidentiary burden Plaintiff must meet to succeed at the first step of the two-step process.  *See* Pl. Mot. at 22-29; Def. Resp. at 17, 22-32.  Plaintiff argues that only a "modest factual showing" is necessary to show that Plaintiff and other putative collective action members are "similarly situated."  Pl. Mot. at 23 (quoting *Barry v. United States*, 117 Fed. Cl. 518, 521 (2014)).  Defendant argues that, because "substantial discovery" has occurred, a "modest plus" standard applies.  Def. Resp. at 20-22.  This heightened burden is a hybrid standard that "strikes the proper balance between the traditional stage-one and two standards."  *Id.* at 22 (quoting *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011)).  However, this Court need not determine whether a heightened standard is appropriate here because Plaintiff has not satisfied the more lenient, "modest factual showing" standard.

A plaintiff can make the requisite "modest factual showing" by offering evidence that the plaintiff and other putative collective action members share "common issues of law and fact arising from the same alleged prohibited activity."  *Barry*, 117 Fed. Cl. at 521 (internal citations and quotations omitted).  This burden is low.  *Id.*  "All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA."  *Gerlach v. Wells Fargo & Co.*, No. C 05-0585, 2006 WL 824652, at *2 (N.D. Cal. Mar. 28, 2006).

When a plaintiff alleges that an entity's actions *de facto* violated the FLSA—such as when the plaintiff alleges that she was directed by managers to perform non-exempt work in contravention of the employer's facially valid policies—the plaintiff must make a minimal showing that potential plaintiffs similarly performed non-exempt work in contravention of the facially valid nationwide common policies. *See Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220-21 (D. Conn. 2003) (denying collective action certification because the plaintiff's claims "will turn upon evidence relating to [plaintiff's] day-to-day tasks, and not upon any [employer] company policy or decision."). A formal policy of classifying employees hired under the same job title as exempt does not, on its own, provide the necessary evidence for certifying a collective action under the FLSA. *See Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 122 (E.D.N.Y. 2020) (holding that plaintiffs' eight sworn statements from six states were insufficient to show a *de facto* nationwide policy of misclassification in violation of the FLSA); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1270 (M.D. Ala. 2004) (holding that certifying a collective is inappropriate where the court must examine each employee's day-to-day tasks to determine if the employees are similarly situated).

Here, Plaintiff has not made the requisite "modest factual showing" that other ACCs nationwide are similarly situated to her. No evidence currently exists in the record suggesting that ACCs in other regions were required to perform non-exempt tasks similar to those Plaintiff alleges. Instead, Plaintiff contends that the following alleged areas of commonality among ACCs across the country demonstrate that ACCs are all similarly situated:

(1) Plaintiff and Assistant Chiefs were all subject to the same uniform job description applicable to all VCS locations nationwide;

(2) the VCS recruits for the Assistant Chief position nationwide using job listings which describe very similar, if not identical, job duties;

(3) Defendant uniformly classified Plaintiff and all Assistant Chiefs nationwide as FLSA exempt at all times during the relevant time period;

(4) Canteen Chiefs, who supervised Assistant Chiefs and oversaw the operation of the canteen, were also subject to a uniform job description, which applied to all VCS locations nationwide;

(5) Nationwide VCS operating policies and procedures provide for the roles and responsibilities of Canteen Chiefs, Assistant Chiefs, and common guidelines for the VCS canteen operations;

(6) Defendant's own overtime policy, coupled with Plaintiff's affidavit and Defendant's 30(b)(6) testimony, evidence that Plaintiff and Assistant Chiefs were required to work beyond forty (40) hours in a workweek to meet operating demands and achieve canteen customer service standards, and that overtime pay in these situations is not provided, [sic]

(7) Under Defendant's overtime policy, Assistant Chiefs were eligible to "apply" for overtime or compensatory time off pay only in rare "emergencies" or "unusual circumstances;" Assistant Chiefs did not have capabilities to adjust their own pre-populated "time" record (work schedule) from the default times; any request to adjust this record required multiple levels of manager pre-approvals, which was not feasible;

(8) Assistant Chiefs were subject to the same pay practices and policies which governed how Assistant Chiefs' salaries were set and determined, and

(9) Defendant's 30(b)(6) witness admits that Assistant Chiefs earned salaries that fall within the same pay range (and in certain circumstances less) than the non-exempt hourly associates employed by the VCS, and which in certain cases potentially fall below the minimum salary requirements set by the FLSA as a threshold requirement to be classified as FLSA exempt.

Pl. Mot. at 6-7; *see also* Pl. Reply at 6-7.  These similarities, if true, at most establish only that Defendant has a common classification for ACCs and a common policy of exempting ACCs from overtime pay.  Plaintiff must further demonstrate that these traits bear a connection with the FLSA claim that she alleges in the present suit.  *See Jibowu*, 492 F. Supp. 3d at 122-23 ("Plaintiffs must show that they and other[s] were similarly situated *with respect to the claim* that they were required to perform non-managerial job duties in contravention of the formal job description." (emphasis added) (alterations omitted) (quoting *Amhaz v. Booking.com (USA), Inc.*, No. 17-cv-2120, 2018

WL 4279468, at *8 (S.D.N.Y. Aug. 23, 2018))).  Plaintiff failed to make that minimal showing here.

Instead, the alleged commonalities among ACCs are detached from Plaintiff's FLSA claim. Plaintiff alleges that ACCs are misclassified because "Plaintiff's day-to-day job duties primarily consisted of making and receiving food, cleaning and stocking the store and ringing the registers." Compl. ¶ 4.  In her complaint, Plaintiff continues that "[ACCs'] primary job duties included assignment to different areas of each canteen, *as directed by the Chiefs who supervised the Assistant Chiefs*, and their primary duties consisted of time spent preparing, making and serving food to canteen customers, performing cleaning tasks, ringing the registers, manning the counters and stocking the stores."  *Id.* ¶ 18 (emphasis added); *see also id.* ¶¶ 22 ("[Plaintiff's] assigned responsibilities would vary day-to-day depending on the tasks the Canteen Chief . . . delegated to Plaintiff."), 24 ("Plaintiff was not employed in a bona fide executive capacity because Plaintiff's day-to-day, primary duties consisted of manual tasks for providing goods and services to customers of the food service, retail store and coffee products and services.").  Accordingly, Plaintiff's claim, as she alleges in her complaint, turns on decisions made by Chiefs at the two canteen locations where she worked.

None of the commonalities that Plaintiff alleges she shares with other ACCs suggest that ACCs in other canteens also worked under Chiefs who consistently assigned non-exempt duties to them.  *See Mike*, 274 F. Supp. 2d at 221 (finding that a shared common job description could "not provide the necessary common thread" because the plaintiff disavowed the job description). Similarly, that all ACCs may be classified as exempt employees and are subject to the same pay policies cannot support the conclusion that Defendant violated the FLSA, as those policies are facially lawful when applied to an employee performing the exempt duties detailed in the ACC

job description.  *See Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 940-41 (D. Minn. 2009) (denying conditional certification where proposed commonality between putative collective members was employer's policy of automatically deducting for meal breaks because plaintiffs' theory of liability was premised upon managers' non-compliance with that otherwise lawful policy).

Additionally, Plaintiff alleges Defendant's common overtime policy shows commonality amongst ACCs.  This allegation similarly falls flat because the aspects of the overtime policy Plaintiff references are all vested in the discretion of Canteen Chiefs and regional managers.  *See* Compl. ¶ 22; Tr. at 9:17-20.  While Defendant's 30(b)(6) witness acknowledged that ACCs may be required to work beyond 40 hours a week to meet operating demands, including by doing non-exempt tasks, this is not a *per se* violation of the FLSA.  *See Velazquez v. Costco Wholesale Corp.*, 603 F. App'x 584, 586 (9th Cir. 2015) (noting that "a court cannot solely rely on an employee's reported hours because the employee could then 'evade a valid exemption' through 'his own substandard performance'" (citations omitted)).  When this Court turns to the merits of Plaintiff's claims, Plaintiff may establish that her manager required her to work in a manner that violated the FLSA; however, even establishing that does not suggest that managers in different canteens and different regions do the same.  At most, it establishes that  putative collective action members in the Palo Alto and Menlo Park, California canteens, who are under the same management as Plaintiff, may have been treated similarly.

Finally, Plaintiff points to varying salary ranges among ACCs, alleging that some ACCs were paid the same or less than non-exempt employees.  Pl. Mot. at 21.  This argument also fails because, rather than point to commonality between ACCs, Plaintiff's argument suggests wide variation in policies applied to ACCs.  Plaintiff alleges that ACCs made less than non-exempt

hourly employees "in certain circumstances."  Pl. Mot. at 6-7; Pl. Reply at 6-7.  That implies that the Defendant did not have a consistent payment practice nationwide.  Because each of Plaintiff's alleged points of commonality do not share a link with Plaintiff's theory of liability, they cannot form the basis for certifying a nationwide collective action.  In discussing ACCs' salary ranges vis-à-vis non-exempt employees' salary ranges, Plaintiff also states that a job posting for an ACC position in Decatur, Georgia shows a potential salary range that would be below the FLSA minimum salary.  Pl. Mot. at 21-22.  However, Plaintiff does not allege that her salary was below the minimum, nor that any other ACC's salary was either.  Such information is simply irrelevant to her claim and the present motion.

Although Plaintiff alleged in her declaration that other ACCs performed similar tasks to her, she did so without any support other than her own statement and, even then, offered only vague claims related to the specific locations she worked.  Pl. Decl. at ¶ 3.  For example, she states that she "witnessed other Assistant Managers at my canteen locations performing the similar types of tasks as I was performing."  *Id.*  At most, this supports a collective action limited to those canteen locations where Plaintiff allegedly witnessed other ACCs spend most of their time performing non-exempt work.  The Court, however, cannot "infer that individuals at one location are similarly situated to individuals elsewhere without specific evidence of consistency."  *Valte*, 2021 WL 3821886, at *12.  Plaintiff's lone declaration speaking of her experience in two canteens and statement that other unidentified ACCs experienced the same thing at those canteens is too flimsy of a record on which to support nationwide collective certification.  *See, e.g.*, *Vasquez v. Vitamin Shoppe Indus. Inc.*, No. 10-cv-8820, 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011) (holding that a "geographically concentrated cluster of [store managers] whom [plaintiff] claims were assigned duties inconsistent with their exempt classification . . . is too thin a reed on which

to rest a nationwide certification"); *Jenkins v. TJX Cos. Inc*., 853 F. Supp. 2d 317, 321 (E.D.N.Y. 2012) (denying nationwide conditional certification where "[t]he Plaintiff's sole submission in support of the existence of a common de-facto policy requiring [assistant store managers] to perform non-exempt tasks [was] [Plaintiff's] own deposition testimony, discussing his own personal experience.").

Not only is it unreasonable to extrapolate Plaintiff's experience to employees in other canteens and regions, but it would also run counter to the evidence developed during discovery. The Court need not consider Defendant's "happy camper" declarations to reach this conclusion.[6] Plaintiff deposed Defendant's Human Resources Manager, Abner Martinez, and Defendant's designated 30(b)(6) witness, Joseph R. Tober, regarding the topics of employee classification, job descriptions, and canteen operational policies and procedures.  *See* Pl. Mot. Ex. 2, Deposition of Defendant United States Pursuant to FRCP 30(b)(6), Joseph Tober (ECF No. 25-1).  During his 30(b)(6) deposition, Mr. Tober explained that ACCs generally report to Canteen Chiefs, who in turn report to regional managers.  *See id.* at 30:6-18.  Mr. Tober further explained that although job descriptions and exemption status of ACCs were uniform, regional managers and Canteen Chiefs would instruct ACCs on their work duties and hours.  *Id.* at 29:9-16, 30:20-31:10.  Mr. Martinez also stated that ACC's duties varied from canteen to canteen.  *See* Pl. Mot. Ex. 3, Deposition of Defendant United States Fact Witness, Abner Martinez (ECF No. 25-1) (Martinez Dep.) at 44:15-23 ("Q. . . .Can an Assistant Chief, to your knowledge, perform duties such as customer service in their role?  A. Absolutely.  Q. Do they perform duties such as running cash

---

[6] Declarations from current employees meant to refute a plaintiff's allegations are often described as "happy camper" declarations.  Courts do not generally consider such declarations at step one of the two-step framework.  *See McColley v. Casey's Gen. Stores, Inc.*, No. 2:18-CV-72 DRL-JEM, 2021 WL 1207564 *5 (N.D. Ind. Mar. 31, 2021).

registers, to your knowledge?  A. There could be instances in which they are required to, because of the needs of the business to do it; i.e., staffing levels, medical issues with their staff, if they are not present to run the operations.").  Plaintiff simply has not shown any meaningful link between her experiences and those of ACCs nationwide.

Plaintiff mistakenly relies on cases certifying collective actions where plaintiffs alleged that an employer's explicit policies violated the FLSA.  For example, in *Barry*, 117 Fed. Cl. at 520, the government changed the classification of the employees at issue from FLSA exempt to non-exempt—which may evidence that its previous policy was facially incorrect.  Here, no such about face exists to indicate that Defendant's classification decision was incorrect or unlawful. Plaintiff instead alleges a *de facto* violation, which requires an individualized inquiry into the proportion of managerial work each plaintiff performed.  *See* Compl. ¶¶ 22-26.  In such cases, courts typically require evidence beyond the plaintiff's own experience in an isolated location to determine that employees are similarly situated across the country.  *See, e.g.*, *Amador v. Morgan Stanley & Co.*, No. 11-cv-4326, 2013 WL 494020, at *5 (S.D.N.Y. Feb. 7, 2013) (relying on evidence from 11 individuals spread over 13 locations in 9 states); *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 746 (M.D. Tenn. 2018) (relying on evidence from 12 individuals who worked at 8 locations in 5 states); *Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 201 (D.D.C. 2018) (relying on evidence from 7 individuals from 6 states); *Stevens v. HMSHost Corp.*, *No. 10-cv-3571*, 2012 WL 13098466, at *3 (E.D.N.Y. 2012) (relying on evidence from 4 individuals from locations in 3 states).

This Court is also unpersuaded by cases outside this Circuit that ignore concerns of case manageability.  *See, e.g.*, *Meyer*, 344 F. Supp. 3d at 207-08 (D.D.C. 2018) (noting that courts tend not to consider arguments about collective action manageability at the conditional certification

stage); *Creely*, 789 F. Supp. 2d at 828 (N.D. Ohio 2011) (suggesting that manageability is more properly addressed under the more stringent stage-two analysis."). Case management considerations are at the heart of the conditional certification process. *See Valte*, 2021 WL 3821886, at *10. Based on the evidence presented by Plaintiff, the Court is unconvinced that certifying a nationwide collective action will lead to the efficiency gains the FLSA collective action process seeks to achieve. The idiosyncratic nature of ACCs' job duties would require this Court to analyze the individual experiences of up to 600 employees at the decertification stage. This does not fit the Court's definition of efficient. Because Plaintiff failed to provide evidence from canteens and regions other than those in which Plaintiff works, Plaintiff's motion for nationwide conditional certification must be denied without prejudice.

II.    Conditional Certification of a Collective Action Limited to Palo Alto and Menlo Park, California Canteens

Plaintiff has provided sufficient evidence to grant conditional certification for ACCs employed at the Palo Alto and Menlo Park, California canteens. Plaintiff's declaration sufficiently links her claims to other ACCs in those canteens by stating that Plaintiff observed other ACCs work excessive hours under similar circumstances, and under the same management. Pl. Decl. ¶ 3; *see, e.g.*, *Crawley*, 145 Fed. Cl. at 450-51 (denying nationwide conditional certification but allowing conditional certification as to certain employees at the location where the named plaintiffs worked where plaintiffs' evidence related only to the employer's conduct at that facility). As noted, Defendant does not oppose conditional certification limited to these two locations. Def. Resp. at 2. The Court, therefore, grants conditional certification of a collective action limited to the Palo Alto and Menlo Park, California canteens.

III.   <u>Manner of Notice</u>

Following conditional certification, this Court—like in most pretrial discovery—has wide discretion in facilitating the notice process.  *See Crawley*, 145 Fed. Cl. at 451.  Plaintiff seeks the names, last known addresses, telephone numbers, job titles, and last known email addresses for potential collective action members to send notice to those individuals.  Pl. Mot. at 32.  Plaintiff additionally requests that this Court require Defendant to provide notice to potential collective action members by sending a notice along with current employees' paychecks and posting a notice in canteen facilities.  *Id.* at 32.  In this case, the Court finds that mail alone will suffice.

First, Plaintiff has not shown a compelling reason to post a notice within the canteen facilities or distribute it with current employees' next paycheck.  Although some courts have authorized those means, Plaintiff has presented no evidence that such notice is necessary here.  Notification via paycheck and canteen posting would only notify current employees, for whom Defendant can already provide accurate mailing addresses.

Plaintiff also has not shown that telephone numbers and last known email addresses are necessary to provide adequate notice to potential collective action members.  Plaintiff has not articulated why using last known mailing addresses is insufficient, especially where, as here, the collective action does not span a lengthy period.  Additionally, such additional contact information, which appears unnecessary here,  may raise privacy concerns.  *See, e.g.*, *Hintergerger v. Cath. Health Sys.*, No. 08-cv-380S, 2009 WL 3464134 at *11 (W.D.N.Y. Oct. 21, 2009) (rejecting plaintiff's request for phone numbers, social security numbers, dates of birth, and email addresses for privacy concerns); *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 163 (N.D.N.Y. 2008) (denying plaintiff's request for telephone numbers and social security numbers).  Additionally,

providing contact information such as phone numbers could frustrate the substance of the court-approved notification.

In contrast, providing putative collective action members' last known addresses and job titles does not implicate the same kinds of privacy concerns. This information will allow Plaintiff to identify potential members of the collective and reliably provide them with the court-approved notice. Accordingly, Defendant is directed to timely provide to Plaintiff, in electronic format, the names, last known mailing addresses, and job titles of putative collective action members, consistent with this Memorandum and Order.

IV.   Equitable Tolling of the Statute of Limitations

The parties agree that the applicable statutory limitation period for bringing a claim in this suit is three years from accrual.[7]  *See* Def. Resp. at 43-44.  Plaintiff, however, argues that the three year statute of limitations should be equitably tolled beginning April 13, 2020, 30 days from the date Plaintiff initially requested contact information for all other ACCs.  *See* Pl. Mot. at 34; Def. Resp. at 44.  Plaintiff argues that, because the statute of limitations under the FLSA continues to run until a collective action member files a consent to join form, equitable tolling is a mechanism that "courts have used . . . to protect individuals who 'have yet to receive notice of the action due to defendant's refusal to supply potential plaintiffs' contact information to the named plaintiffs.'"

---

[7] The FLSA requires that civil actions "must be commenced within two years 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'"  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129 (1988) (quoting 29 U.S.C. § 255(a)).  A violation of an FLSA provision will be classified as willful and qualify for the longer statute of limitations only when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *Id.* at 133.  Plaintiff has adequately alleged willfulness under the FLSA in the present suit, as Defendant acknowledges, to trigger the three-year statute of limitations period.  *See* Compl. ¶ 56; Def. Resp. at 2, 44.

Pl. Reply at 24 (quoting *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 543 (N.D. Cal. 2007)).

Relying on *Adams*, Plaintiff contends that equitable tolling "counters the advantage that defendants

would otherwise gain by withholding potential plaintiffs' contact information until the last possible

moment." 242 F.R.D. at 543. Specifically, Plaintiff points to delays caused by the COVID-19

pandemic and Defendant's difficulties in obtaining the requested information. Pl. Reply at 9; *see*

*also* Pl. Mot. at 8. Though the Court is sympathetic to Plaintiff's request, it declines to equitably

toll the limitation period here.

As the Federal Circuit has explained, courts may typically toll the statute of limitations

only when the plaintiff shows that the defendant concealed the facts underpinning the cause of

action or if the plaintiff's injury was inherently unknowable at the accrual date. *Martinez v. United*

*States*, 333 F.3d 1295, 1301 (Fed. Cir. 2003). Courts have also tolled statutory deadlines when the

plaintiff filed a defective pleading during the statutory period. *See Irwin v. Dep't of Veterans Affs.*,

498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has

actively pursued his judicial remedies by filing a defective pleading during the statutory period, or

where the complainant has been induced or tricked by his adversary's misconduct into allowing

the filing deadline to pass."). In all scenarios, courts deploy equitable tolling "sparingly."

*Crawley*, 145 Fed. Cl. at 451.

Deployment of this equitable remedy is unnecessary here. Plaintiff argues that she

requested the contact information for all putative collective action members on March 13, 2020,

and that the Court should apply equitable tolling "[b]ecause Plaintiff has diligently pursued her

entitlement to this information and is without fault for the delay[.]" Pl. Mot. at 34. But this does

not fall within the categories of cases the Federal Circuit has identified as eligible for equitable

tolling. Indeed, Plaintiff did not suffer a latent injury. Her harm—to the extent any exists—would

have been apparent when she received a paycheck that only compensated her for 40 hours of work. She also does not allege that she was "tricked by defendant's misconduct." *See* Tr. at 34:3-36:23 ("[Plaintiff is] not alleging other facts that have been concealed or anything of that nature.").  Nor does this case involve any defective pleading.  *See id.*  Instead, Plaintiff argues that her single request for contact information for all ACCs, in conjunction with the COVID-19 pandemic, justifies the tolling of the statute.  *See* Pl. Mot. at 34-35; Pl. Reply at 24-25.  This is insufficient.

This Court is bound by Federal Circuit law on tolling statutory deadlines; it is unpersuaded by holdings articulated outside of this Circuit that equitable tolling may be appropriate to account for the time it takes the court to consider a motion for conditional certification.  *See, e.g.*, *Adams*, 242 F.R.D. at 543 (N.D. Cal. 2007); *Mitchell v. Acosta Sales, LLC*, 841 F. Supp. 2d 1105, 1120 (C.D. Cal. 2011).  The law in this Circuit is clear.  Equitable tolling is appropriate only where the plaintiff (1) filed a defective pleading during the statutory period, (2) was induced or tricked by the defendant into allowing the deadline to pass, or (3) suffered an injury that was inherently unknowable at the time the cause of action accrued.  *See Martinez*, 333 F.3d at 1301, 1318-19; *Martin v. United States*, No. 13-cv-834C, 2015 WL 12791601, at *3 (Fed. Cl. Oct. 15, 2015). Plaintiff does not fall into any of those categories.  Her request for equitable tolling is accordingly denied.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Conditional Certification and Notice (ECF

No. 25) is **GRANTED in part** and **DENIED in part**.  Consistent with this Memorandum and

Order, Plaintiff's Motion is:

1. **DENIED** without prejudice with respect to Plaintiff's request for nationwide
   conditional certification;

2. **GRANTED** with respect to Plaintiff's request for conditional certification of a
   collective action of all individuals employed by the VCS as ACCs in the Palo Alto
   and Menlo Park, California canteens during the last three years; and

3. **DENIED** with respect to Plaintiff's request for equitable tolling of the statute of
   limitations.

IT IS SO ORDERED.

                                          <u> s/Eleni M. Roumel  </u>
                                          ELENI M. ROUMEL
                                            Judge

October 15, 2021
Washington, D.C.

23